Wolters Kluwer

**CT Corporation**
**Service of Process Notification**
02/26/2025
CT Log Number 548507381

## Service of Process Transmittal Summary

**TO:** Jan White
Huntington Ingalls Industries, Inc.
5220 RIVER ROAD
AVONDALE, LA 70094-2770

**RE:** **Process Served in Louisiana**

**FOR:** Huntington Ingalls Incorporated (Domestic State: VA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: TRAYLOR MORGAN // To: Huntington Ingalls Incorporated |
| **DOCUMENT(S) SERVED:** | Citation, Attachment(s), Petition |
| **COURT/AGENCY:** | Parish of Orleans, Civil District Court, LA<br>Case # 202500994 |
| **NATURE OF ACTION:** | Asbestos Litigation - Personal Injury |
| **PROCESS SERVED ON:** | C T Corporation System, Baton Rouge, LA |
| **DATE/METHOD OF SERVICE:** | By Process Server on 02/26/2025 at 09:51 |
| **JURISDICTION SERVED:** | Louisiana |
| **APPEARANCE OR ANSWER DUE:** | Within 21 days after service of citation (Document(s) may contain additional answer dates) |
| **ATTORNEY(S)/SENDER(S):** | Jeremiah Boling<br>BOLING LAW FIRM, LLC<br>541 Julia Street<br>Suite 300<br>New Orleans, LA 70130<br>504-569-5904 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 02/27/2025, Expected Purge Date: 03/04/2025<br><br>Image SOP<br><br>Email Notification, Jan White jan.white@hii-co.com<br><br>Email Notification, Shayna Callis shayna.e.callis@hii-co.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System<br>3867 Plaza Tower Dr.<br>Baton Rouge, LA 70816<br>8775647529<br>MajorAccountTeam2@wolterskluwer.com |



**EXHIBIT A**

Wolters Kluwer

**CT Corporation**
**Service of Process Notification**
02/26/2025
CT Log Number 548507381

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

Wolters Kluwer

# PROCESS SERVER DELIVERY DETAILS

**Date:** Wed, Feb 26, 2025
**Server Name:** Drop Service

| | |
|---|---|
| Entity Served | HUNTINGTON INGALLS INCORPORATED |
| Case Number | 2025-00994 |
| Jurisdiction | LA |

| Inserts | | |
|---|---|---|
| | | |

**ATTORNEY'S NAME:** Boling, Jeremiah S 34249
**AND ADDRESS:** 541 Julia St. Suite 300, New Orleans, LA 70130

# CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
## STATE OF LOUISIANA

**NO: 2025-00994** **DIVISION: D** **SECTION: 12**

**TRAYLOR MORGAN**

**Versus**

**HUNTINGTON INGALLS, INCORPORATED, et al**

## CITATION

TO: HUNTINGTON INGALLS INCORPORATED (f/k/a Avondale.Shipyards, Inc.)
THROUGH: AGENT FOR SERVICE, CT CORPORATION SYSTEM
3867 PLAZA TOWER DRIVE, BATON ROUGE, LA 70816

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the

PETITION FOR DAMAGES

a certified copy of which accompanies this citation, or file an answer or other legal pleading within the delay provided by Civil Code of Procedure Article 1001. The mentioned article is noted on the back of this page for your reference. You may make your filing in the office of the Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA 70112.

## ADDITIONAL INFORMATION

Legal assistance is advisable. If you want a lawyer and can't find one, you may contact the New Orleans Lawyer Referral Service at https://neworleansbar.community.lawyer/. This Referral Service operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through Southeast Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-1000.

**********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE**********

**IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the Parish of Orleans, State of LA February 12, 2025**

**Clerk's Office, Room 402**
**Civil Courts Building**
**421 Loyola Avenue**
**New Orleans, LA 70112**

**CHELSEY RICHARD NAPOLEON, Clerk of**
**The Civil District Court**
**for the Parish of Orleans**
**State of LA**
**by** Debbie Ciaccio
**Debbie Ciaccio, Deputy Clerk**

## SHERIFF'S RETURN
(for use of process servers only)

**PERSONAL SERVICE**

On this ________ day of ________________ ________ served a copy of the within

**PETITION FOR DAMAGES**

ON **HUNTINGTON INGALLS INCORPORATED (f/k/a Avondale.Shipyards, Inc.)**

THROUGH: **AGENT FOR SERVICE, CT CORPORATION SYSTEM**

Returned the same day

________________________ No. ____________

Deputy Sheriff of ________________________

Mileage: $ ________________________

________________ / ENTERED / ________________

PAPER RETURN

__________ / __________ / __________

SERIAL NO. DEPUTY PARISH

**DOMICILIARY SERVICE**

On this ________ day of ________________ ________ served a copy of the within

**PETITION FOR DAMAGES**

ON **HUNTINGTON INGALLS INCORPORATED (f/k/a Avondale.Shipyards, Inc.)**

THROUGH: **AGENT FOR SERVICE, CT CORPORATION SYSTEM**

by leaving same at the dwelling house, or usual place of abode, in the hands of ________________________ a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating HIM/HER the said **HUNTINGTON INGALLS INCORPORATED (f/k/a Avondale.Shipyards, Inc.)** being absent from the domicile at time of said service.

Returned the same day

________________________ No. ____________

Deputy Sheriff of ________________________

RECEIVED DATE FEB 25 2025 E.B.R. Sheriff's Office

Civil Code of Procedures
Article 1001

Art. 1001. Delay for answering

A. A defendant shall file his answer within twenty-one days after service of citation upon him, except as otherwise provided by law. If the plaintiff files and serves a discovery request with his petition, the defendant shall file his answer to the petition within thirty days after service of citation and service of discovery request.

B. When an exception is filed prior to answer and is overruled or referred to the merits, or is sustained and an amendment of the petition ordered, the answer shall be filed within fifteen days after the exception is overruled or referred to the merits, or fifteen days after service of the amended petition.

C. The court may grant additional time for answering.

Acts 2021, No. 174, §1, eff. Jan. 1, 2022.

FILED FEB 04 2025 CLERKS OFFICE CIVIL DISTRICT COURT

CIVIL DISTRICT COURT FOR THE OF ORLEANS

STATE OF LOUISIANA

NO. 2025-00994 SECTION DIVISION D-12

TRAYLOR MORGAN

VERSUS

HUNTINGTON INGALLS, INCORPORATED, et al.

FILED: ______________________ ______________________ DEPUTY CLERK

## PETITION FOR DAMAGES

TO THE HONORABLE CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS, STATE OF LOUISIANA, AND THE JUDGES THEREOF:

1. Made Plaintiff herein is:

**TRAYLOR MORGAN,** an adult resident and domiciliary of Shepherd, Texas.

2. Made Defendants herein are:

A. **PREMISE OWNER/EMPLOYER/ TAKE HOME DEFENDANTS**

1. **HUNTINGTON INGALLS, INCORPORATED (f/k/a Avondale Shipyards, Inc.)**
This defendant is being sued for negligence/premise/strict liability/ take home liability

2. **TEXACO, INC.**
This defendant is being sued for negligence/premise/strict liability

3. **INTERNATIONAL BUSINESS MACHINES CORPORATION (as successor to Olsen Engineering)**
This defendant is being sued for negligence/premise/strict liability/employer liability

B. **SUPPLIER/MANUFACTURER/SELLER/CONTRACTOR DEFENDANTS**

4. **LIBERTY MUTUAL INSURANCE COMPANY (as insurer of Hopeman Brothers)**
This defendant is being sued as a supplier/ manufacturer/ seller/ contractor defendant.

5. **EAGLE, INC. (f/k/a Eagle Asbestos & Packing Co., Inc.)**
This defendant is being sued as a supplier/ manufacturer/ seller/ contractor defendant.

6. **TAYLOR-SEIDENBACH, INC.;**
This defendant is being sued as a supplier/ manufacturer/ seller/ contractor defendant.

7. **BURMASTER LAND AND DEVELOPMENT COMPANY, LLC (f/k/a Burmaster Land & Development Company, Inc.)**
This defendant is being sued as a supplier/ manufacturer/ seller/ contractor defendant.

8. **UNION CARBIDE CORPORATION**
This defendant is being sued as a supplier/ manufacturer/ seller/ contractor defendant.

9. **GOULDS PUMPS (IPG) INC.**
This defendant is being sued as a supplier/ manufacturer/ seller/ contractor defendant.

10. **PARAMOUNT GLOBAL (f/k/a ViacomCBS, Inc., f/k/a Westinghouse Electric Corporation, f/k/a Westinghouse Electric & Manufacturing Company)**
This defendant is being sued as a supplier/ manufacturer/ seller/ contractor defendant.

11. **FOSTER WHEELER ENERGY CORPORATION**
This defendant is being sued as a supplier/ manufacturer/ seller/ contractor defendant.

12. **BAYER CROPSCIENCE, INC. (successor to Rhone Poulenc AG Company, f/k/a Amchem Products, Inc., f/k/a Benjamin Foster Company)**
This defendant is being sued as a supplier/ manufacturer/ seller/ contractor defendant.

13. **HONEYWELL INTERNATIONAL, INC. (individually and as successor in interest to Allied-Signal, Inc. and The Bendix Corporation)**
This defendant is being sued as a supplier/ manufacturer/ seller/ contractor defendant.

14. **JOHNSON & JOHNSON**
This defendant is being sued as a supplier/ manufacturer/ seller/ contractor / talc defendant.

15. **INTERNATIONAL PAPER COMPANY (as successor to U.S. Plywood)**
This defendant is being sued as a supplier/ manufacturer/ seller/ contractor defendant.

16. **RED RIVER TALC LLC**
This defendant is being sued as a supplier/ manufacturer/ seller/ contractor / talc defendant.

17. **GRAYBAR ELECTRIC COMPANY, INC.**
This defendant is being sued as a supplier/ manufacturer/ seller/ contractor defendant.

18. **CARRIER CORPORATION**
This defendant is being sued as a supplier/ manufacturer/ seller/ contractor defendant.

19. **DURO DYNE CORPORATION**
This defendant is being sued as a supplier/ manufacturer/ seller/ contractor defendant.

20. **TRANE US INC (f/k/a American Standard, f/k/a American Radiator & Standard Sanitary Corporation)**
This defendant is being sued as a supplier/ manufacturer/ seller/ contractor defendant.

21. **VENTFABRICS INC.**
This defendant is being sued as a supplier/ manufacturer/ seller/ contractor defendant.

22. **RHEEM MANUFACTURING COMPANY**
This defendant is being sued as a supplier/ manufacturer/ seller/ contractor defendant.

23. **SENTRY INSURANCE COMPANY**
(as insurer for Reilly-Benton Company) this defendant is being sued as a seller/supplier/product/manufacturer/contractor defendant.

24. **GENERAL ELECTRIC COMPANY**
This defendant is being sued as a seller/supplier/product/manufacturer defendant.

25. **WHIRLPOOL CORPORATION**
This defendant is being sued as a supplier/ manufacturer/ seller/ contractor defendant.

3. Traylor Morgan was diagnosed with mesothelioma on or about November 27, 2024, which was caused by and a consequence of his exposure to asbestos as set forth herein. As a direct and proximate result of the delictual conduct of the defendants, Plaintiff, Traylor Morgan, has recently contracted mesothelioma and has suffered physically, financially, mentally, and emotionally.

4. The defendants, Eagle, Inc. and Taylor-Seidenbach, Inc., are domestic corporations with their registered offices located in Orleans Parish. Plaintiff was exposed to products distributed and installed by the above-referenced defendants at or from the work sites in Paragraph 2. Plaintiff specifically alleges that these products, in combination with other asbestos-containing products, caused his asbestos-related injuries.

5. Orleans Parish is a proper venue for this matter pursuant to Louisiana Code of Civil Procedure Article 42(2) because the Defendants Eagle, Inc. and Taylor-Seidenbach are domestic corporations licensed to do business in this State and has designated as its primary business office and/or primary place of business in Louisiana as Orleans Parish.

6. Orleans Parish is a proper venue for this matter pursuant to La. Stat. Ann. §22:1269B(1) because events, accident or injury occurred or in Orleans Parish. Orleans Parish is a proper venue

for this matter pursuant to La. C. Civ. Proc. Art. 74 because Orleans Parish is where wrongful conduct occurred or where the damages were sustained.

7. The damages sought by the Plaintiff, exclusive of interest and costs, exceed the minimum jurisdictional limits of the court.

8. Traylor Morgan was exposed to injurious levels of asbestos through his employment at Avondale in and around their New Orleans area shipyards including but not limited to Westwego Main Yard, Belle Chasse, Harvey Yard as a laborer from 1966- 1973. Additionally, Petitioner worked in and/or around Cleveland, Texas as an electrical and air-conditioning repair man from 1975-1999. Traylor Morgan was exposed to injurious levels of asbestos through his employment at Texaco while working for Olsen Engineering in the 1960's and 1970's in Conroe, Texas. Additionally, Plaintiff sustained exposures to asbestos from talcum powder from the talc defendants in Orleans and Jefferson Parish, as well as Texas from the talc defendants. During his employment, Traylor Morgan suffered direct exposures to asbestos-containing products, as well as bystander exposures to asbestos-containing products when working in close proximity to other employees and/or contractors manipulating asbestos-containing products which created dust that Petitioner was exposed to.

9. Additionally, Plaintiff was exposed to asbestos from the work of his father, James Morgan, who was employed by Westinghouse from 1958-1965 as an electrician and while his father was working as a naval inspector at the Avondale Shipyard from 1966-1975. Plaintiff was further exposed to asbestos while living with his brother Joel Morgan who was employed by Avondale as a Painter and who both used, handled, and/or was in the vicinity of others using or handling asbestos or asbestos containing products. On a daily basis during their employment, both Plaintiff's father and brother were exposed to dangerously high levels of toxic substances, including asbestos, and asbestos-containing products sold, manufactured, and/or distributed by the seller/supplier/product/manufacturer defendants identified in Paragraph 2 in the normal routine course of their work, and they brought these fibers home on their clothes and person, subsequently exposing Plaintiff.

10. In connection with the Plaintiffs work at the sites identified in Paragraph 8 and his father and brothers work at Avondale as set forth in Paragraph 9, Plaintiff suffered direct by-stander and para-occupational/take home exposures to asbestos and asbestos-containing products designed, manufactured, sold, supplied, installed, used and/or maintained at these sites by the Defendants,

including but not limited to the supplier/manufacturer/seller/contractor defendants.

11. In addition to his occupational and shade tree mechanic work, throughout his life from approximately the 1950s through present day, Mr. Morgan daily, personally, and frequently utilized asbestos-containing talcum powder products distributed by Johnson & Johnson; Red River Talc, LLC (f/k/a Johnson & Johnson); This asbestos-containing talcum powder products consisted entirely of asbestos-containing talc mined and supplied by the defendants.

12. These products were unreasonably dangerous *per se*, defective in composition or construction, defective in design, lacked suitable warnings or instructions concerning the hazards presented, as a result of negligence, willful, and /or reckless misconduct, and as a result of intentional misconduct certain of the defendants. Plaintiff's personal, daily, and frequent use of the talcum powder generated asbestos-containing dust and exposed Plaintiff to respirable asbestos fibers. In addition, Plaintiff's immediate family members, including his wife, parents, and brothers and sisters, would daily, personally and frequently utilize asbestos containing talcum powder products manufactured and distributed by Johnson and Johnson and Red River Talc (f/k/a Johnson & Johnson) in close proximity to Plaintiff, that would release dangerously high levels of respirable asbestos fibers that Plaintiff, Traylor Morgan, would be exposed to as a bystander.

13. Before and during Traylor Morgan's exposure periods, each of the defendants designed, tested, evaluated, manufactured, packaged, furnished, stored, handled, transported, installed, used, supplied and/or sold asbestos-containing products for use at, including but not limited to, each of the facilities listed in Paragraph 8 and/or Paragraph 9 from which the Plaintiff was exposed to asbestos-containing products, materials, insulation, and products that contained fibrous, incombustible, chemical-resistant mineral substances commonly called "asbestos".

14. When inhaled or otherwise ingested, asbestos causes irreparable and progressive lung damage that can manifest itself as asbestos-related pleural disease, asbestosis, mesothelioma, pulmonary and bronchogenic carcinoma, gastrointestinal cancer, cardiac problems, other lung diseases, pneumoconiosis, and various other injuries.

15. Each of the Defendants knew or should have known, through industry and medical studies the existence of which was unknown to the Plaintiff, of the health hazards inherent in the asbestos-containing products they were selling and/or using. Instead of warning the Plaintiff and the general public about these dangers, the Defendants ignored or concealed such information, or condoned

such concealment, in order to sell or use asbestos or asbestos-containing products and avoid litigation by those who were injured from asbestos inhalation.

16. As a direct and proximate result of having inhaled, ingested, or otherwise been exposed to asbestos as described above, Traylor Morgan contracted mesothelioma. Mr. Morgan was diagnosed with mesothelioma on or about November 27, 2024. A cause of Mr. Morgan's contraction of mesothelioma was his asbestos exposure.

17. Because of the latency period between exposure to asbestos and the onset of mesothelioma and because of the concealment by some defendants of the causes and effects of exposure to asbestos, Plaintiff did not know, nor could he have reasonably known, that his injuries were caused by his asbestos exposure until recently, which occurred less than one year prior to the filing of the instant Petition for Damages. Further, Plaintiff only recently discovered his injuries, not more than one year preceding the filing of this Original Petition for Damages.

18. In connection with his work at the aforementioned job sites, Traylor Morgan was exposed to and inhaled or otherwise ingested significant quantities of asbestos, having neither knowledge or reason to believe that asbestos was dangerous.

## GENERAL NEGLIGENCE ALLEGATIONS

19. On information and belief, all of the Defendants identified in Paragraph 2 above were responsible to provide Plaintiff and his father and brother with warnings concerning hazardous conditions at their sites and/or their use of hazardous materials, and generally to provide Plaintiff and/or his father and brother with safe premises in order to protect life health, safety, and welfare of Plaintiff and/or his father and brother, and had the following responsibilities:

A. Inspection, approval, and supervision of these various premises for hazards and vices that may present a hazard to Plaintiff and/or his father/brother;

B. To see that proper safety rules were adopted, promulgated, and enforced concerning the use and handling of hazardous materials that may present harm to people on the premises;

C. To see that workers performed their duties pertaining to their work in a proper, safe and workmanlike manner so as not to present an unreasonable risk of harm to the workers, as well as Plaintiff and/or his father/ brother;

D. To see that the Defendants and their employees used safe and sound principles and practices in their work involving the use and storage of hazardous materials;

E. To make health and hygiene decisions on any and all questions regarding the use of respiratory protection devices involving the use and storage of hazardous materials;

F. To keep abreast of state-of-the-art-knowledge, as it pertains to the dangers of asbestos inhalation, involving the use and storage of hazardous materials;

G. To provide adequate warnings, safety equipment, ventilation, and breathing apparatus, where such was unnecessary, in order to prevent Plaintiff and/or his father/brother from being harmed by exposure to asbestos in the environment in which he was required to be present;

H. To make certain that Plaintiff and/or his father/brother were provided safe environment, free from excess asbestos dust inhalation and operations free from excess asbestos dust;

I. To comply with applicable state and federal regulations regulating exposure to asbestos, including but not limited to, those regulations regulating exposure to asbestos, including but not limited to, those regulations promulgated by the U.S. Department of Labor pursuant to the Walsh/Healy Act and Occupational Safety and Health Act.

20. Not only did Defendants have the duties and responsibilities set forth in the foregoing paragraph, but they did actually undertake on an operational basis to perform said duties and fulfill said responsibilities, and they negligently failed to carry out those undertakings and assumed duties in the manner asserted in the paragraph below, and on information and belief, Defendants knew of the dust laden atmosphere in which Plaintiff and/or his father/brother were required to enter, and work, which was damaging and dangerous to Plaintiff, and each knew or should have known of the dangers to Plaintiffs health posed by working in an atmosphere polluted with asbestos dust without proper protection or warnings. Plaintiff alleges that these defendants knew or should have known that the mesothelioma sustained by Plaintiff could have been avoided by the use of adequate ventilation, warnings, packaging and safety equipment.

21. On information and belief, Defendants negligently failed in the performance of their responsibilities and/or actual undertakings to provide Plaintiff and/or his father/brother with safe premises and operations in the following particulars:

A. Failing to properly ventilate the area in which Plaintiff and/or his father/brother

were required to enter in connection with his work;

B. Failing to warn or provide proper safety appliances, including but not limited to respirators, air-fed hoods, etc. for Plaintiff and/or his father/brother;

C. Failure to institute safety procedures and plans for the adequate protection of Plaintiff and/or his father/brother;

D. Failing to warn Plaintiff and/or his father/brother of the dangers posed by the polluted atmosphere in which he was required to work, including but not limited to, the risk of asbestosis, pleural disease, lung cancer, esophageal cancer, mesothelioma, other cancers, and the carcinogenic effect of the risk of lung cancer caused by asbestos exposure to persons with pre-existing smoking habits from the handling and use of asbestos;

E. Failing to enforce applicable safety rules after such rules were actually adopted;

F. Failing to keep abreast of the scientific and engineering knowledge regarding the dangers of, and protection against, the occupational exposure to asbestos;

G. Failing to properly supervise operations;

H. Commencing and continuation of operations which were under their control and supervision when they knew or should have known that such operations cause Plaintiff to be exposed to asbestos dust, without protections;

I. Failing to abide by applicable state and federal regulations regulating the premises' exposure to asbestos, including but not limited to, those regulations promulgated by the U. S. Department of Labor, pursuant to the Walsh/Healy Act and the Occupational Safety and Health Act;

J. Failing to measure the levels of asbestos dust in the premises working environment.

22. The negligence of these defendants was a substantial factor and contributed in causing damages to Plaintiff.

**<u>STRICT LIABILITY AND NEGLIGENCE OF CERTAIN EMPLOYER AND EMPLOYERS' EXECUTIVE OFFICERS AND DIRECTOR DEFENDANTS</u>**

23. Pursuant to La. Civil Code Article 2317, Plaintiff alleges a claim for strict liability and negligence against certain Employer Defendants. Plaintiff alleges strict premise liability

against these Defendants for failing to provide Plaintiff with a safe place in which to work free from hazards of asbestos, which failure was a proximate cause of the Plaintiff's injuries.

24. The premises within which the Plaintiff worked and was exposed to asbestos, were owned by and in the custody of these certain Employer Defendants and were unreasonably dangerous due to presence and use of asbestos and asbestos-containing products with little or no precautions taken to minimize the risk of exposure and absolutely no warning of that risk. This unreasonably dangerous condition was a direct and proximate cause of the Plaintiff's injuries set forth herein.

25. These employer/premise Defendants negligently, recklessly, willfully and/or because of gross and wanton negligence, fault, or strict liability, failed to properly discharge its duties to the Plaintiff in the following particulars.

A. Failure to provide Plaintiff with a safe place to work;

B. Failure to provide the Plaintiff with adequate engineering or industrial hygiene measures to control the level of exposures to asbestos, including but not limited to local exhaust, general ventilation, respiratory protection, segregation of work involving asbestos, use of wet methods to reduce the release of asbestos into the ambient air, medical monitoring air monitoring, and procedures to prevent the Plaintiff from being exposed to and breathing asbestos; and

C. Failure to inform or warn the Plaintiff of the hazards of asbestos exposure.

These specific acts of fault were a substantial contributing factor of the Plaintiff's injuries.

26. Avondale delegated to the executive officers and directors the responsibility to provide Plaintiff with proper supervision, safety instruction, warnings concerning dangers or hazards in the workplace, and generally to provide Plaintiff a safe workplace and to protect Plaintiff's life, health, safety and welfare while employed by the Defendant employers. Plaintiff alleges that the executive officers and directors had the following responsibilities delegated to them by Plaintiff's employer or actually undertook to perform the following duties:

a. inspection, approval and supervision of the work of Plaintiff and his co-employees;

b. to see that proper safety rules were adopted, promulgated, and enforced concerning the use of respiratory protection devices;

c. to see that Plaintiff and his co-employees performed the duties pertaining to their work in a proper, safe and workmanlike manner;

d. to see that Plaintiff and his co-employees used safe and sound principals and practices in their work;

e. to make health and hygiene decisions on any and all questions regarding the use of respiratory protection devices;

f. to keep abreast of state of the art knowledge as it pertains to the dangers of asbestos inhalation;

g. to provide adequate warnings, physical examinations, safety equipment, ventilation, and breathing apparatus, where such was necessary in order to prevent Plaintiff from being harmed by exposure to asbestos in the environment which Plaintiff was required to work;

h. to make certain that employees, including Plaintiff, were provided a safe working environment free from asbestos dust inhalation;

i. to comply with applicable State and Federal regulations regulating workplace exposure to asbestos, including but not limited to those regulations promulgated by the U.S. Department of Labor pursuant to the Walsh/Healey Act and the Occupational Safety and Health Act; and

j. to provide Plaintiff with a safe place to work.

**NEGLIGENCE AND STRICT LIABILITY AGAINST MANUFACTURER/SELLER/SUPPLIER/CONTRACTOR DEFENDANTS**

27. The Defendants identified in Paragraph 2B above as manufacturers, sellers, contractors and/or suppliers of asbestos products were engaged in or materially participated in the business of manufacturing, or assisted in the manufacturing, or facilitating the manufacturing of asbestos products, or representing themselves as manufacturers of asbestos products, or are professional vendors of asbestos or asbestos-containing products, or as a contractor, which were expected to and did reach the Plaintiff and/or his father/brother job site(s) where they were exposed to them.

28. The products manufactured, distributed, supplied, sold and/or used by these defendants were defective, and unreasonably dangerous per se to Plaintiff and/or his father/brother who

were intended and foreseeable users and bystanders that were exposed to these products. These defects include, without limitation, the following:

A. The manufacture, sale, supply and use of products that are unreasonably dangerous, or unreasonably dangerous per se;

B. Manufacture, sale, supply and use of products that possess inherent and known properties that make them unreasonably dangerous by presenting high potential for causing serious injury, such as respiratory disease, cancer, and other health problems to those who would be foreseeably exposed to them such as Plaintiff and/or his father/ brother;

C. Lack of warning or of sufficient warning of the hazards these products would present in the course of their normal foreseeable use or intended use;

D. Lack of safety instructions or of sufficient safety instructions for eliminating or reducing the health risks associated with the intended use of these products;

E. Failure of defendants to inspect these products to assure sufficiency and adequacy of warnings and safety cautions;

F. Failure to test or adequately test these products for defects or hazards that they could present to the intended or foreseeable users;

G. Failure to truthfully report or adequately report the results of product testing, and medical studies associated with foreseeable hazards of these products by intended or foreseeable users;

H. Failure to properly design these products where the nature of the product did not require use of asbestos mineral or where alternate, equally suitable substances were readily available;

I. Defects in the composition and construction of these products;

J. Failure to recall these products manufactured, sold and supplied;

K. Failure to properly package these products so that they could be safely transported, handled, stored or disposed of;

L. Over-warranting the safety of these products.

29. Defendants are liable to Plaintiff in strict liability for things in their guard, possession, custody or control, pursuant to article 2317 of the Louisiana Civil Code, that have caused harm to Plaintiff.

30. The defective conditions of Defendants' products and fault, as noted above, are a cause of Plaintiff's injuries and damages complained of herein.

31. Plaintiff also alleges that each and every one of the foregoing Defendants were also negligent in engaging in the substandard conduct enumerated above and that this negligence was also a proximate cause of Plaintiff's injuries.

## STRICT LIABILITY AND NEGLIGENCE OF PREMISE OWNERS

32. Defendants identified as premise owners in Paragraph 2A above, are liable for Plaintiff's injuries caused by their fault, in the form of strict liability and/or negligence as detailed herein, and in failing to provide Plaintiff and/or his father /brother with a safe place in which to work free from hazards of asbestos, which failure was a proximate cause of the Plaintiffs injuries.

33. The premises within which the Plaintiff and/or his father/ brother worked and were exposed to asbestos, were owned by and in the custody of these premise owner defendants and were unreasonably dangerous due to presence and use of asbestos and asbestos-containing products with little or no precautions taken to minimize the risk of exposure and absolutely no warning of that risk. This unreasonably dangerous condition was a direct and proximate cause of the Plaintiffs injuries set forth herein.

34. These Defendants are liable to the Plaintiff for the damages described in this Petition for the damages described in this Petition for the following acts of negligence while Plaintiff was working within their respective work sites:

A. Failing to provide respiratory protection to the Plaintiff and/or his father/brother;

B. Failing to provide safety equipment to the Plaintiff and/or his father/brother;

C. Failure to provide general ventilation in Plaintiff and/or his father/brother work area(s);

D. Failing to provide local exhaust in Plaintiff's and/or his father/brother work area(s);

E. Failing to provide air free from airborne asbestos fibers in Plaintiff's work area(s);

F. Failing to provide proper Plaintiff with proper medical monitoring;

G. Failing to educate Plaintiff and/or his father/brother of the hazards of asbestos;

H. Failing to post warning or caution signs regarding the hazards of asbestos;

I. Failing to implement wet methods to control the level of airborne asbestos fibers in Plaintiff's work area(s);

J. Failing to implement the use of asbestos-free materials;

K. Inducing Plaintiff and/or his father/brother to work in areas polluted with respirable asbestos fibers.

35. As a direct result of the aforementioned acts, Traylor Morgan inhaled and otherwise ingested asbestos fibers from the asbestos and asbestos-containing products present within his work sites listed in Paragraph 8, and as a direct result, Plaintiff suffered injuries complained herein.

36. During the course of the Plaintiff and/or his father/brother's work, Plaintiff and/or his father/brother were exposed to asbestos and/or asbestos containing products, which were in the care, control and custody of these defendants. Because of the extreme hazard it poses to humans, asbestos constitutes a defect or vice in the products to which Plaintiff was exposed, which defect or vice was a cause in fact of Plaintiff's injuries described herein. Accordingly, these defendants are strictly liable to Petitioner in accordance with Louisiana Civil Code article 2315 and 2317.

37. During the course of the Plaintiff's and/or his father/brother's work, Plaintiff was exposed to asbestos released from theses premises, which release was a cause in fact of Plaintiffs injuries described herein. Accordingly, these defendants are strictly liable to Plaintiff in accordance with, but not limited to, Louisiana Civil Code article 2315, former Louisiana Civil Code articles 660 and 669, and *Langlois v. Allied Chemical Corp*, 249 So.2d 133 (La. 1971).

38. These defendants knew or should have known that asbestos posed a hazard to humans and that there were specific engineering and industrial hygiene controls that could help reduce the levels of airborne asbestos fibers, nonetheless failed or suppressed, through silence, neglect or inaction, the truth regarding asbestos to Plaintiff and/or his father so as to obtain an unjust advantage for themselves over and at expense of Plaintiff or to cause loss or inconvenience to Plaintiff. This action or inaction by the defendants was a direct and proximate cause of the damages described herein.

**<u>TALC SUPPLIERS/DISTRIBUTORS/MANUFACTURERS/SELLERS</u>**
**(Applies only to the Talc Defendants)**

39. Plaintiff repeats and reiterates the prior allegations of this complaint as if alleged more fully below:

40. For all pertinent times, Johnson & Johnson,; Red River Talc, LLC (hereinafter "the Talc Defendants") purchased, sold, and distributed PRODUCTS, which Plaintiff TRAYLOR MORGAN purchased, used and personally applied, causing his injuries and illnesses.

41. At all pertinent times, Defendants had a duty to exercise reasonable care to consumers, including Plaintiff herein, in the design, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling and/or sale of the PRODUCTS.

42. At all pertinent times, Johnson & Johnson,; Red River Talc, LLC; were not providing and still has not provided warnings to consumers of the PRODUCTS of the risk of cancers, including mesothelioma, posed by talc contained therein.

43. Johnson & Johnson,; Red River Talc, LLC; are liable to Plaintiff TRAYLOR MORGAN as professional vendors of these PRODUCTS, and as such, because of the Defendants' size, volume of business and merchandising practices, knew or should have known of the defects of the products they sold, and are strictly liable and negligent for failing to warn the users of potential health hazards from the use of said products.

44. Johnson & Johnson,; Red River Talc, LLC; unsafely marketed their talcum products as uniquely safe and non-carcinogenic, at times when Defendants knew or should have known such claims were false and/or without adequate scientific support. As a consequence of Defendants' misrepresentations, customers, and ultimate users of the products (users, including Plaintiff TRAYLOR MORGAN and his immediate family members) were deceived as to the true nature and extent of the health hazards posed by Defendants' PRODUCTS.

45. Johnson & Johnson,; Red River Talc, LLC; are liable to Plaintiff TRAYLOR MORGAN for the suffering and injuries from a disease, namely, mesothelioma, caused by his foreseeable use of the Defendants' talcum products, because the Talc Defendants' fraudulent misrepresentations were detrimentally relied upon by Plaintiff TRAYLOR MORGAN who was exposed to their talcum products.

46. Finally, Johnson & Johnson,; Red River Talc, LLC; are liable to Plaintiff TRAYLOR MORGAN because they knew or should have known that the talcum products, which they sold and supplied, were unreasonably dangerous in normal use, and their failure to communicate this information constitutes negligence. This negligence was the cause of Plaintiff TRAYLOR MORGAN's injuries including, but not limited to, mesothelioma, and other ill health effects.

## PRE-LOUISIANA PRODUCT LIABILITY ACT PROFESSIONAL VENDOR CLAIM
**(Applies only to the Talc Defendants)**

47. For all pertinent times, the Talc Defendants (Johnson & Johnson,; Red River Talc, LLC) purchased, sold, and distributed the PRODUCTS, which Plaintiff TRAYLOR MORGAN

purchased, used and daily, frequently, and personally applied which caused his injuries and illnesses from approximately the 1950s – 2000s.

48. At all pertinent times, the Talc Defendants had a duty to exercise reasonable care to consumers, including Plaintiff herein, in the design, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling and/or sale of the PRODUCTS.

49. At all pertinent times the Talc Defendants knew or should have known that the perineal use of the PRODUCTS significantly increases the risk of mesothelioma.

50. As a direct and proximate result of the Talc Defendants' negligence, Plaintiff purchased, used, and personally, frequently and regularly applied the PRODUCTS which caused his asbestos cancer—mesothelioma; Plaintiff was caused to incur medical bills, lost wages, conscious pain and suffering, mental anguish, and other damages.

51. The Talc Defendants are liable to TRAYLOR MORGAN as a professional vendor of the PRODUCTS, and as such, because of the Talc Defendants' size, volume of business and merchandising practices, knew or should have known of the defects of the PRODUCTS they sold, and are strictly liable and negligent for failing to warn the users of potential health hazards from the use of said PRODUCTS. In the past the Talc Defendants have had numerous locations across the state of Louisiana.

52. Further, the Talc Defendants knew the specific use for which the PRODUCTS would be used and had unique expertise into the physical and chemical properties of the PRODUCTS and their health hazards. The Talc Defendants unsafely marketed the PRODUCTS as uniquely safe and non-carcinogenic, at times when the Talc Defendants knew or should have known such claims were false and/or without adequate scientific support. As a consequence of the Talc Defendants' misrepresentations, customers and ultimate users of the PRODUCTS (users, including Plaintiff Traylor Morgan) were deceived as to the true nature and extent of the health hazards posed by the PRODUCTS.

53. The Talc Defendants are liable to Plaintiff TRAYLOR MORGAN for the suffering and injuries from a disease, namely, mesothelioma, caused by his foreseeable use of the PRODUCTS, because the Defendant's fraudulent misrepresentations were detrimentally relied upon by TRAYLOR MORGAN who was exposed to the PRODUCTS.

54. Finally, the Talc Defendants are liable to Plaintiff TRAYLOR MORGA because they knew or should have known that the PRODUCTS, which they sold and supplied, were unreasonably dangerous in normal use, and their failure to communicate this information constitutes negligence. This negligence was the cause of Plaintiff TRAYLOR MORGA's injuries including, but not limited to, mesothelioma, and other ill health effects.

**INSURANCE ALLEGATIONS**

55. Plaintiff avers that Liberty Mutual Insurance Company issued policies of insurance to Hopeman Brothers that provided coverage for the causes of action asserted by Plaintiff. As such, Liberty Mutual Insurance Company is liable for the damages alleged in the Original Petition and any supplement against Hopeman Brothers individually, jointly and *in solido.*

56. Plaintiff avers that Sentry Insurance Company issued policies of insurance to Reilly-Benton Company that provided coverage for the causes of action asserted by Plaintiff. As such, Sentry Insurance Company is liable for the damages alleged in the Original Petition and any supplement against Hopeman Brothers individually, jointly and *in solido.*

**DAMAGES**

57. The conduct of all Defendants, as alleged hereinabove, was a direct, proximate and producing cause of the damages resulting from mesothelioma and of Plaintiff, Traylor Morgan and of the following general and special damages including:

A. The conscious physical pain and suffering and mental anguish sustained by Petitioner (past, present and future);

B. The disfigurement suffered by Petitioner;

C. The physical impairment suffered by Petitioner (past, present and future);

D. Reasonable and necessary medical expenses incurred by Petitioner;

E. All past, present and future lost earnings and loss of earning capacity;

F. Loss of quality of life;

G. All forms of relief or categories of damages allowed by Louisiana law for wrongful death claims, against parties the law allows such claims to be alleged against, with interest from the date of injury until paid, plus costs of these proceedings.

58. Plaintiff demands trial by jury on all issues.

**WHEREFORE,** Petitioner demands judgment against the Defendants, and each of them, jointly, severally and/or *in solido* for all damages, for their costs expended herein, for judicial interest from the date of judicial demand, and for such other and further relief, both at law and in equity, to which Petitioner may show themselves justly entitled.

Respectfully submitted,

**BOLING LAW FIRM, LLC**

Jeremiah Boling (Bar No. 34249)
Caroline Boling (Bar No. 34494)
Adam Whitworth (Bar No. 34149)
Stephanie Frederick (Bar No. 36462)
Alaina Brandhurst (Bar No. 35057)
541 Julia Street, Suite 300
New Orleans, LA 70130
Telephone: (504) 569-5904
Fax: (504) 569-5774
jboling@bolingfirm.com
cboling@bolingfirm.com
awhitworth@bolingfirm.com
sfrederick@bolingfirm.com
abrandhurst@bolingfirm.com
**ATTORNEYS FOR PLAINTIFF**

A TRUE COPY
DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

**PLEASE SERVE THE FOLLOWING DEFENDANTS WITH A COPY OF PLAINTIFFS' PETITION FOR DAMAGES:**

**INTERNATIONAL BUSINESS MACHINES CORPORATION**
**(as successor to Olsen Engineering)**
Through its agent for service,
CT Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

**HUNTINGTON INGALLS INCORPORATED (f/k/a Avondale Shipyards, Inc.)**
Through its agent for service,
CT Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

**TEXACO, INC.** **LONG ARM SERVICE**
Via the Louisiana Long Arm Statute
6001 Bollinger Canyon Road
San Ramon, CA 94583

**RED RIVER TALC LLC** **LONG ARM SERVICE**
Via the Louisiana Long Arm Statute
Through its agent for service,
Steven M. Rosenberg
One Johnson & Johnson Plaza
New Brunswick, NJ 08933

**JOHNSON & JOHNSON** **LONG ARM SERVICE**
Via the Louisiana Long Arm Statute
Through its agent for service,
Steven M. Rosenberg
One Johnson & Johnson Plaza
New Brunswick, NJ 08933

**LIBERTY MUTUAL INSURANCE COMPANY**
Through its agent for service,
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, LA 70809

**DURODYNE CORPORATION** **LONG ARM SERVICE**
Via the Louisiana Long Arm Statute
Through its agent for service,
Corporation Service Company
81 Spence Street Bayshore, NY 11706-9117

**VENTFABRICS INC.** **LONG ARM SERVICE**
Via the Louisiana Long Arm Statute
Through its agent for service,
Brooke Berning Peppey
560 Green Bay Road
Winnetka, IL 60093

**CARRIER CORPORATION**
Through its agent for service,
Union Agent Group, Inc.
1070-B West Causeway Approach
Mandeville, LA 70471

**GRAYBAR ELECTRIC COMPANY, INC.**
Through its agent for service,
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

**HONEYWELL INTERNATIONAL, INC.**
Through its agent for service,
Corporation Service Company
450 Laurel Street, 8th Floor
Baton Rouge, LA 70801

**BAYER CROPSCIENE, INC.**
Corporation Service Company
80 State Street
Albany, New York 12207

**TRANE US INC (f/k/a American Standard, f/k/a American Radiator & Standard Sanitary Corporation)**
Through its agent for service,
Corporation Service Company
450 Laurel Street, 8th Floor
Baton Rouge, LA 70801

**FOSTER WHEELER ENERGY CORPORATION**
Through its agent for service,
United Agent Group, Inc.
1070-B West Causeway Approach
Mandeville, LA 70471

**PARAMOUNT GLOBAL (F/K/A VIACOMCBS, INC., F/K/A WESTINGHOUSE ELECTRIC CORPORATION, F/K/A WESTINGHOUSE ELECTRIC & MANUFACTURING COMPANY)**
Through its agent for service,
Corporation Service Company
450 Laurel St., 8th Floor
Baton Rouge, LA 70801

**GOULDS PUMPS (IPG), INC.**
Through its agent for service,
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

**UNION CARBIDE CORPORATION**
Through its agent for service,
CT Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

**BURMASTER LAND & DEVELOPMENT COMPANY, LLC**
Through its agent for service,
A.J. Burmaster
7033 Edgewater Dr.
Mandeville, LA 70471

**TAYLOR SEIDENBACH, INC.**
Through its agent for service,
Hal Shepard
731 South Scott Street
New Orleans, LA 70119

**EAGLE, INC. (F/K/A EAGLE ASBESTOS & PACKING CO., INC.)**
Through its agent for service,
Susan B. Kohn
1100 Poydras Street, 30th Floor
New Orleans, LA 70163

**INTERNATIONAL PAPER COMPANY**
Through its agent for service,
CT Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

**WHIRLPOOL CORPORATION**
*Through its agent for service,*
CSC OF ST. TAMMANY PARISH, INC.
417 W. 21st Avenue
Covington, LA 70433

**RHEEM MANUFACTURING COMPANY** **LONG ARM SERVICE**
*Through its agent for service,*
Corporation Service Company
2 Sun Court,, Suite 400,
Peachtree Corners, GA, 30092, USA

**GENERAL ELECTRIC COMPANY**
Through its agent for service,
CT Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

**SENTRY INSURANCE COMPANY**
Through its agent for service,
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, LA 70809